**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | |
| PRAYLOR NEWMAN | NO. 02-CR-539 |

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                                   **June 23, 2021**

Presently before the Court is Defendant's Sealed *Pro* Se Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government opposes the relief sought by Defendant. For the reasons articulated in the paragraphs below, Defendant's motion shall be denied.

**Factual Background**

In March 2002, police officers impounded a van belonging to Defendant. (Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. No. 109] at pg. 3) [hereinafter Government's Response]. Upon conducting a search of the car, the officers found two fully loaded firearms, both of which were registered to an individual named Frank Green. *Id.* at 3-4. Mr.

Green, who was not a felon at the time, had been directed by Defendant to make straw purchases[1] of these firearms, among others, between July 2001 and January 2002. (Government's Response at pg. 3). Because Defendant was a felon and prohibited from possessing or owning a firearm, he was charged with possession of a firearm by a felon in September 2002.

The day after his arrest, Defendant instructed his then-girlfriend, Lisa Diaz, to relay a concocted story to Mr. Green in order to misinform the police and absolve Defendant of wrongdoing. (Government's Response at pg. 4). Additionally, both times Ms. Diaz was subpoenaed to testify, in August and December of 2002, Defendant sought to protect himself and demanded she falsely testify. (Government's Response at pp. 4-5). While she initially followed his instructions, Ms. Diaz eventually declared her past testimony as falsified and revealed the full extent of Defendant's obstruction. *Id.*

After these revelations, a grand jury in the Eastern District of Pennsylvania charged Defendant with: one count of conspiracy to straw purchase firearms in violation of 18 U.S.C. § 371; four counts of causing false statements to be made to a

---

[1] A straw purchase is "[a] criminal act in which something, especially a firearm, is bought by one person on behalf of another who is legally unable to make the purchase themselves." *Definition of Straw Purchase*, Lexico, https://www.lexico.com/en/definition/straw_purchase (last visited June 21, 2021).

firearms dealer and aiding and abetting in violation of 18 U.S.C. §§ 924(a)(1)(A) and (2); five counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); four counts of witness tampering in violation of 18 U.S.C. § 1512; and one count of conspiracy to obstruct justice in violation of 18 U.S.C. § 371. Defendant was tried in May of 2003 and found guilty on all counts. He was sentenced by this Court to 293 months of imprisonment. (Government's Response at pg. 2).

Now, having served about 267 months of his sentence, Defendant moves for his early release pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i). (Government's Response at pg. 7). Defendant argues that in light of the COVID-19 pandemic, his suffering from particular medical conditions—asthma, hypertension, and obesity, present appropriate grounds for his release.[2] *Id.*

---

[2] In his motion, Defendant also states a claim that his conviction is unconstitutional under *Rehaif v. United States*. (Government's Response at pg. 7). We do not speak to the merits of that claim, as a motion for compassionate release is not the proper avenue on which to have raised it. *See United States v. Henderson*, 2021 WL 2156910, at *2 (3d Cir. 2021) (not precedential) (per curiam) (Fed. Appendix) quoting *Okereke v. United States*, 307 F.3d 117, 120 (3d. Cir. 2002) (defendant's previously rejected claim of sentencing error was not an extraordinary and compelling reason for release, as "[m]otions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences"); *See also United States v. Musgraves*, 840 F. App'x 11, 13 (7th Cir. 2021) (not precedential) ("Compassionate release is a mechanism for inmates to seek a sentence reduction for compelling reasons, not for remedying potential errors in a conviction.").

**Administrative Exhaustion**

We must first determine whether Defendant has cleared §3582's procedural hurdle of waiting thirty days after his facility's warden received the request for release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (holding that §3582 demands strict compliance with its administrative requirement). It is unclear that Defendant ever petitioned the warden at FCI Hazelton for his compassionate release. Not only did Defendant fail to attach copies of his paperwork to the instant motion, but the government additionally states that FCI Hazelton could not locate a record of him taking any such action. (Government's Response at pg. 7, footnote 3). Ordinarily, this failure to meet the administrative requirement would "present[] a glaring roadblock foreclosing compassionate release at this point." *Raia*, 954 F.3d at 597. However, because the government has chosen not to dispute that the administrative exhaustion requirement has been satisfied, we will assume as much *arguendo* in the event documentation is supplied at a later date. *Id.*

**Extraordinary and Compelling Reasons**

Under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant may be eligible for release or a sentence reduction if they present "extraordinary and compelling reasons" to the sentencing court.

*Raia*, 954 F.3d at 595. Defendant states that his suffering from three separate medical conditions, asthma, hypertension, and obesity, present extraordinary and compelling reasons for his release in light of the ongoing COVID-19 pandemic. (Government's Response at pg. 7). We find the reasons presented fail to rise to the requisite level of "extraordinary and compelling."

The Third Circuit has expressed that ". . .the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597. Accordingly, a defendant who moves for compassionate release in light of the COVID-19 pandemic must show: (1) they suffer from a sufficiently serious medical condition, or advanced age, which places them at high risk of severe illness if infected by the COVID-19 virus; and (2) actual, non-speculative risk of exposure to the COVID-19 virus in their correctional facility. *United States v. Tartaglione*, 2020 WL 3969778, at *5 (E.D. Pa. July 14, 2020).

Of the medical conditions presented by Defendant, only his obesity is recognized by the CDC as a risk factor for the development of severe illness after contraction of COVID-19.[3]

---

[3] While we recognize that asthmatic symptoms may vary over time, at the present moment it appears that Defendant's condition is best defined as mild asthma. *See Classification of Asthma*, Univ. of Mich. Health, https://www.uofmhealth.org/health-library/hw161158 (last visited June 16, 2021). Defendant is prescribed an Albuterol inhaler; however, it is not intended for daily use. (Government's Response at pg. 8). Further, given

5

*COVID-19: People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021) (omitting mild asthma as a risk factor and stating that hypertension only "possibly" can make you more likely to get severely ill from COVID-19). This Court has consistently denied motions for compassionate release in the past involving similar combinations of medical conditions. We see no reason why the instant circumstances should be evaluated any differently given Defendant's mild asthma and body mass index (BMI) of 32.4. (Government's Response at pg. 8); *See, e.g.*, *United States v. Irizzary*, 2021 WL 735779 (E.D. Pa. Feb. 25, 2021) (denying the defendant's motion for compassionate release despite their well-managed asthma and BMI of 33.1); *See also*, *e.g.*, *United States v. Gonzalez*, 2021 WL 662496, at *2-3 (E.D. Pa. Feb. 19, 2021) (denying the defendant's motion for compassionate release despite their having hypertension and a BMI over thirty-five).

Additionally, Defendant has received both doses of the Pfizer COVID-19 vaccine, which militates strongly against granting his motion. The CDC's website states that "[b]ased on

---

Defendant's responses during his May 2020 routine clinic visit and April 2021 chronic care visit, it would appear he has not had any asthmatic incidents since May 2019. *Id.*

evidence from clinical trials in people aged 16 years and older, the Pfizer-BioNTech vaccine [is] 95% effective at preventing laboratory-confirmed COVID-19 illness in people without evidence of previous infection." *COVID-19: Pfizer-BioNTech COVID-19 Vaccine Overview and Safety*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last updated May 27, 2021). It is acknowledged that ". . .it is unclear how emerging COVID-19 variants will alter vaccine efficacy over time." *United States v. Hannigan*, 2021 WL 1599707, at *5 (E.D. Pa. Apr. 22, 2021). However, current data suggests that available COVID-19 vaccines provide a great deal of protection against not only infection, but also against the development of severe symptoms if a vaccinated individual were to get infected. *Pfizer and BioNTech Confirm High Efficacy and No Serious Safety Concerns through up to Six Months Following Second Dose in Updated Topline Analysis of Landmark COVID-19 Vaccine Study*, Business Wire (Apr. 1, 2021), https://www.businesswire.com/news/home/20210401005365/en/ (follow-up study on the efficacy of the Pfizer COVID-19 vaccine finding 91.3% effectiveness against COVID-19 and 100% effective against severe disease as defined by the CDC at a time when variants were known to be circulating).

The risk of exposure at Defendant's correctional facility is also minimal. FCI Hazelton currently only has one confirmed active case of COVID-19 among its staff, and zero confirmed active cases among its inmate population. *COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated June 16, 2021) (scroll down to "COVID-19 Cases" and click the "Full breakdown and additional details" link). This combination of the considerable protections afforded by the Pfizer COVID-19 vaccine and the low potential for exposure at Defendant's facility results in a situation that falls well short of meeting the "extraordinary and compelling" requirement of Section 3582(c)(1)(A)(i). *See, e.g.*, *Hannigan*, 2021 WL 1599707 at *6 ("to the extent that [the defendant's medical conditions] would have presented extraordinary and compelling reason for release when combined with a COVID-19 infection, the Court finds that the risk has been significantly reduced by his recent COVID-19 vaccination.").

### **Section 3553(a) Factors**

§3582 additionally requires the Court to consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). Even if Defendant was found to have presented an extraordinary and compelling reason, we find an analysis of the Section 3553(a) factors as required by §3582 strongly disfavors his release.

Factors of particular relevance in this inquiry are: (1) the nature and circumstances of the offense; (2) the history and characteristics of the Defendant; and (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(1)-(2).

Looking to the nature and circumstances of the offense, it is worth noting that the instant offenses are nonviolent in nature. *See United States v. Bowers*, 423 F.3d 518 (3d Cir. 2005) (holding that possession of a firearm by a felon pursuant to § 922(g)(1) is a nonviolent offense). However, through every step of their being committed, Defendant was actively involving and insisting on the criminal compliance of otherwise innocent individuals in the perpetration of the instant offenses.

Defendant also has an extensive criminal record prior to his current incarceration, including crimes ranging from burglarizing a recreational center in 1992 to the battery of his then-girlfriend in 1998. (Government's Response at pg. 6). Defendant's conduct while incarcerated is additionally of concern. His record shows a total of fifteen disciplinary infractions, including possession of a hazardous tool in 2019. (Government's Response at pp. 6-7).

The severity of Defendant's sentence reflects his persistent attempts to meddle with and taint our system of criminal justice. To provide for Defendant's early release and stray from his carefully considered sentence would neither reflect the seriousness of the instant offenses nor promote respect for the law.

### **Risk to the Community**

Defendant also presents undue risk to the community should he be released at this time. While we again acknowledge that the instant offenses were nonviolent in nature, Defendant's past criminal history and willingness to involve other innocent individuals in his delinquent conduct still promote great concern. Additionally, it should be noted that the instant offenses were in fact committed while Defendant was on parole for various state crimes.

### **Conclusion**

In conclusion, we find that Defendant has failed to meet his burden of presenting an "extraordinary and compelling reason" for his release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Additionally, we find that Defendant's release is heavily disfavored when considered in light of the 18 U.S.C. § 3553(a) factors and would present undue risk to the community.

An Order follows.